**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA**

IN RE:   BOOKBINDERS' RESTAURANT, INC.   :   Chapter 11
                                         :
         Debtor(s)                       :   Bky. No. 06-12302ELF
                                         :

**M E M O R A N D U M   O P I N I O N**

**BY:  ERIC L. FRANK,  U.S.  BANKRUPTCY JUDGE**

**I.  INTRODUCTION**

In this chapter 11 case, I must decide whether a trade creditor who holds an allowed administrative expense by virtue of 11 U.S.C. §503(b)(9), one of the new provisions added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"),[1] is entitled to immediate payment of the allowed expense.

I hold that the timing of the payment of an administrative expense allowed under §503(b)(9) is within the discretion of the bankruptcy court and that before compelling a chapter 11 debtor to pay the allowed administrative expense I may consider potential "prejudice to the debtor, hardship to the claimant, and . . . detriment to other creditors."  In re Garden Ridge Corporation, 323 B.R. 136, 143 (Bankr. D.N.J. 2005).  I reject the creditor's argument that it is entitled to immediate payment as a matter of law because the Debtor in this case has been paying other administrative expenses, specifically, the Debtor's postpetition trade debt, which has been paid in the ordinary course pursuant to 11 U.S.C. §363(c)(1).

I will hold an evidentiary hearing to permit the parties to develop the record further

---

[1] Pub. L. No. 109-8, §1227(b), 119 Stat. 23 (2005).

-1-

before I determine whether to compel payment of the allowed §503(b)(9) or defer payment to a later stage in the case.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Bookbinder's Restaurant Inc. commenced this bankruptcy case by filing a voluntary petition under chapter 11 of the Bankruptcy Code on June 5, 2006.  Since then, it has continued its business operations as a restaurant in Center City, Philadelphia.[2]  On June 26, 2006, the U.S. Trustee appointed a Committee of Unsecured Creditors ("the Committee").

Five creditors have requested the allowance of an administrative expense under 11 U.S.C. §503(b)(9).  Each creditor has asserted that it supplied goods to the Debtor within twenty (20) days before the commencement of the case.

Section 503(b)(9) of the Bankruptcy Code provides for the allowance of an administrative expense for:

> the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

11 U.S.C. §503(b)(9).

---

[2] The restaurant known as "Old Original Bookbinders" is well known in the region as a "landmark" restaurant.  According to the information provided on the website of the Philadelphia Industrial Development Corporation, a not-for-profit corporation founded by the City of Philadelphia and the Greater Philadelphia Chamber of Commerce to promote economic development in the City, the restaurant began operated continuously from 1865 to 2001.  It reopened in February 2005.  See http://www.pidc-pa.org/newslist.asp (link to "Historic Bookbinders Reopens With Updated Look").  This historical background plays no part in my decision, but may of general interest.

The Debtor has agreed that all five creditors are entitled to the allowance of an administrative expense. The Debtor has reached an agreement with each creditor as to the amount of the allowed expense. The table below identifies the five creditors and sets forth the amount of the allowed administrative expense that I have approved:

| Name of Creditor | Amount of Allowed Administrative Expense |
|---|---|
| Killian's Harvest Green | $5,914.90 |
| U.S. Food Service, Inc. | $14,446.06 |
| Fichera Foods, Inc. | $ 9,954.40 |
| Blue Crab Plus, Sfd | $33,021.74 |
| OceanPro Industries, Ltd. | $23,228.79 |
| TOTAL | $86,565.89 |

The five creditors differ in their positions with respect to the timing of the payment of their respective allowed administrative expenses. One of the five creditors agreed that its expense should be paid when the Debtor pays other administrative expenses in the case.[3] Three of the five creditors agreed to defer the actual payment of the allowed administrative expense for the time being, while reserving the right to request immediate payment at a later time.[4] The fifth creditor, Blue Crab Plus Sfd ("Blue Crab"), insists that it is entitled to immediate payment of its allowed expense.

---

[3] U.S. Food Service, Inc.

[4] Killian's Harvest Green, Fichera Foods, Inc. and OceanPro Industries, Ltd..

Blue Crab makes two arguments in support of its request for immediate payment of its allowed §503(b)(9) expense, see 11 U.S.C. §503(a) ("[a]n entity may timely file a request for payment of an administrative expense").

First, Blue Crab reasons as follows: an inherent part of the reorganization process for a business continuing to operate under chapter 11 is the payment of its postpetition operating expenses in the ordinary course; the Debtor's monthly operating reports ("MOR") suggest that it is actually paying those expenses; §503(b)(9) requires that a chapter 11 debtor treat "20 day" administrative expenses in the same manner as administrative expenses arising from the postpetition delivery of goods and services; it follows that Blue Crab's §503(b)(9) allowed expense should be paid immediately.[5]

Second, Blue Crab argues that in any event, the Debtor can afford to make the payment. Blue Crab points to the Debtor's most recently MOR for October 2006 which, on its face, appears to state that the Debtor's cash on hand (as of October 31, 2006) exceeded $200,000. With that amount of cash available, Blue Crab argues that there is no reason to delay payment of its $33,021.74 allowed administrative expense.

In response, the Debtor contends that the timing of the payment of administrative expenses is within the discretion of the bankruptcy court and that the discretion should be exercised to permit the Debtor to continue paying its postpetition payables while deferring, for now, payment of the §503(b)(9) allowed administrative expenses. As for its financial condition, the Debtor argues that the October 2006 MOR, while accurate, does not fully reflect certain

---

[5] At the last hearing, Blue Crab was blunt, suggesting that if the Debtor was paying its utility bills on an ongoing basis, it was equally obliged to pay its §503(b)(9) administrative expenses.

operational realities which render the Debtor's financial condition less liquid than it might appear to be from a superficial review of its MOR's. The Debtor contends that requiring immediate payment of Blue Crab's administrative expense (with the possible consequence that other §503(b)(9) creditors might then make the same demand for immediate payment) could impair its cash position to the point of jeopardizing its reorganization.[6] To fully develop the record on that issue, the Debtor requests that another hearing be scheduled since the Debtor's witnesses on the subject were not available to testify at the December 13, 2006 hearing.

At the conclusion of the December 13, 2006 hearing, I agreed to decide the merits of Blue Crab's first argument – that it has an unfettered right to immediate payment – because the resolution of that issue would determine whether a further hearing is required in this matter. After the December 13, 2006 hearing, Debtor and Blue Crab filed short submissions in support of their positions.

### III. DISCUSSION

The allowance and treatment of administrative expenses is governed by 11 U.S.C. §503. Section 503(a) provides that a party may request payment of an allowed expense. 11 U.S.C. §503(a). Section 503(b) of the Bankruptcy Code addresses the allowance of administrative expenses.

---

[6] In making this argument, the Debtor seems aware that it is "walking a thin line." Its argument that there may be a serious financial impediment to the payment of an allowed administrative expense, implicates the feasibility of a successful reorganization. See 11 U.S.C. §1129(a)(9)(A) and §1129(a)(11). Of course, it is also possible that the financial issues alluded to by the Debtor are temporary and can be resolved by the time this case reaches confirmation.

Prior to the effective date of BAPCPA, §503(b) set forth six (6) categories of expenses allowable as administrative expenses. 11 U.S.C. §503(b). In the context of a chapter 11 case in which the debtor-in-possession continues its business operations, one might divide the six (6) categories into two types: (1) the operational expenses of a reorganizing debtor[7] and (2) the expenses associated with the bankruptcy reorganization process itself.[8]

When a debtor-in-possession continues to operate its business during a chapter 11 case, the debtor may pay its expenses incurred in the ordinary course "without notice and hearing" as permitted by 11 U.S.C. §363(c)(1). Typically, post-petition "trade debt" is incurred by an operating chapter 11 debtor in the ordinary course of business operations. Therefore, the formal administrative expense allowance process provided in §503(b)(1), which includes "notice and hearing," need not be invoked before a debtor may pay for goods and services received postpetition in the ordinary course of business.

BAPCPA added several additional categories of allowable administrative expenses. See 11 U.S.C. §§503(b)(7) - (9). One of the new categories is §503(b)(9), colloquially referred to as "the 20 day" expense provision.

Section 503(b)(9) effectively converted what previously was a prepetition "claim" into an allowable administrative expense.[9] This new status provides at least two benefits to holder of an

---

[7] See 11 U.S.C. §503(b)(1) ("actual, necessary costs and expenses of preserving the estate").

[8] See 11 U.S.C. §§503(b)(2) - (6) (compensation allowed to, inter alia, attorneys, other appointed professionals, members of official committees).

[9] Pre-BAPCPA, in certain circumstances, creditors who provided goods to the Debtor retained a right to reclaim the goods pursuant to 11 U.S.C. §546(c). Section 546(c) also was amended by BAPCPA. See Pub. L. No. 109-8, §1227(a), 119 Stat. 23.

administrative expense allowed under §503(b)(9). First, the allowed expense must be paid in full as a condition of confirmation of a chapter 11 plan. See 11 U.S.C. §1129(a)(9)(A) (requiring full payment of allowed administrative expenses[10] on effective date of the plan as a condition of confirmation, unless the holder has agreed to different treatment). Previously, the same liability was treated as a prepetition claim that could be classified in a plan of reorganization, was subject to plan voting and was susceptible to being paid only partially in a plan confirmed over the creditor's dissent. See 11 U.S.C. §1123(a)(1) (requiring that a plan designate classes of "claims"); id. §1126(c) (defining "acceptance" of a plan by a class of claims).[11] The second possible benefit to the creditor is that there is a potential for a more prompt payment of "the 20 day" liability. Since the liability is an administrative expense and not a prepetition claim, a chapter 11 debtor with adequate resources can pay the allowed administrative expense prior to confirmation.

Neither §503(a) nor §503(b) provides explicit guidance to the bankruptcy court as to when an allowed administrative expenses should be paid. As one commentator has observed, there are at least four possible points in the life of a chapter 11 reorganization case when a §503(b)(9) "20 day" expense may be payable: (1) immediately upon the commencement of the case; (2) immediately upon allowance; (3) prior to confirmation, in the discretion of the debtor; and (4) on the effective date of the plan, along with other allowed administrative expenses (such

---

[10] Section 1129(a)(9)(A) refers to payment of claims of a kind specified in 11 U.S.C. §507(a)(2). Section 507(a)(2) refers to "administrative expenses allowed under section 503(b)."

[11] Obviously, the more favorable treatment accorded to "the 20 day" liabilities has the potential of impacting adversely a debtor's prospects for reorganization.

as allowed professional fees) pursuant to 11 U.S.C. §1129(a)(9)(A).[12]  Ryan T. Routh, "Twenty-day Claims:" The Anticipated and Unanticipated Consequences of Code §503(b)(9), Am. Bankr. Inst. J. 24, *78 -79 (November 25, 2006).

Prior to the enactment of 11 U.S.C. §503(b)(9), it was black letter law that the question whether the bankruptcy estate should be ordered to pay an allowed administrative expense is within the bankruptcy court's discretion.  E.g., In re Colortex Industries, 19 F.3d 1371, 1384 (11th Cir. 1994); In re HQ Global Holdings, Inc., 282 B.R. 169, 173 (Bankr. D. Del. 2002); In re Dieckhaus Stationers of King of Prussia, Inc., 73 B.R. 969, 972 (Bankr. E.D. Pa. 1987).  See also 4 Collier on Bankruptcy ¶503.3, at 503-13 (15th rev. ed. 2006) ("[t]he time at which a particular administrative expense can or must be paid will vary from case to case depending upon the chapter under which the case was filed and the circumstances of the case").

The considerations which guide a court's decision whether to order immediate payment of an allowed administrative expense have been described in different ways.  In Dieckhaus Stationers, the court stated its discretion should be exercised "with reference to other provisions and policies of the Code."  73 B.R. at 972.  Other courts have been more specific.  In HQ Global Holdings, the court stated that the court should consider "bankruptcy's goal of an orderly and equal distribution among creditors and the need to prevent a race to a debtor's assets."  282 B.R. at 173.  And, as stated above in the Introduction, in In re Garden Ridge Corporation, the court stated that it would consider "prejudice to the debtor, hardship to the claimant, and the potential detriment to other creditors."  323 B.R. at 143.

---

[12] One court has referred to §1129(a) as setting "the outside date by which administrative expenses must be paid in a Chapter 11 case."  In re The Korea Chosun Daily Times, 337 B.R. 773, 784 (Bankr. E.D.N.Y. 2005)

It is against this legal backdrop that Congress enacted the new provision, §503(b)(9), creating a new category of allowable administrative expenses. The question in this case is whether §503(b)(9) was intended to alter existing practice that the timing of the payment of an allowed administrative expenses is left to the discretion of the bankruptcy court. I conclude that in enacting §503(b)(9), Congress did not intend to alter existing practice under 11 U.S.C. §503(b).

The Supreme Court has instructed that the Bankruptcy Code should not be read "to erode past bankruptcy practice absent a clear indication that Congress intended such a departure." Pennsylvania Department of Public Welfare v. Davenport, 495 U.S. 552, 563, 110 S.Ct. 2126, 2133 (1990); accord, Cohen v. de la Cruz, 523 U.S. 213, 221-222, 118 S.Ct. 1212,1218 (1998); Official Committee of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery, 330 F.3d 548, 571 -572 (3d Cir.2003) (en banc), cert. dismissed, 540 U.S. 1001-02, 124 S.Ct. 530 (2003).[13]

There is nothing in the language of §503(b)(9) to support Blue Crab's suggestion that it is entitled to immediate payment of its allowed expense in derogation of the accepted principle that the timing of payment of an allowed administrative expense is within the court's discretion. Section 503(b)(9) does nothing more than define a type of liability, previously treated as a prepetition claim, which is now accorded administrative expense status. The text of §503(b)(9)

---

[13] I am cognizant that this principle was enunciated in the context of construing the Bankruptcy Code in light of practice under the 1898 Bankruptcy Act, as amended. However, at this point in time, after twenty seven (27) years of practice under the Bankruptcy Code, I see no reason that it should not apply with equal force before the Code is construed to mandate the modification of practices that have become well established under existing caselaw. Certainly, there are provisions of BAPCPA which, without question, were intended to alter existing practice. See, e.g. 11 U.S.C. §707(b).

neither states nor even implies that allowance of the expense encompasses an unqualified right to immediate payment. Nor does the text of the provision suggest that an administrative expense allowed under §503(b)(9) is to be treated in a more favorable manner than any other allowed §503(b) administrative expense.[14]

Distilled to its essence, Blue Crab's argument is a kind of "equal protection" argument – i.e., since the Debtor is paying what Blue Crab posits are other administrative expenses (the liabilities incurred by the Debtor for goods and services and services received postpetition), Blue Crab's allowed §503(b)(9) administrative expense must also be paid. I am not convinced by this argument for three reasons.

First, Blue Crab has presented no authority supporting the proposition that a holder of an administrative expense allowed under §503(b) has an unqualified legal entitlement to be paid at the same time as post-petition creditors who are being paid in the ordinary course pursuant to 11 U.S.C. §363(c)(1). Indeed, such a holding would be contrary to the cases discussed above which treat the subject of actual payment of allowed administrative expenses as a discretionary matter for the court. And, as I have previously observed, there is nothing in the text of §503(b)(9) or the legislative history which suggests that a §503(b)(9) allowed administrative expense is entitled to more favorable treatment than other allowed administrative expenses so as to justify an exception to the general rule. That said, there may be circumstances in which it would be inequitable or inappropriate to permit a debtor to pay certain administrative expenses but not others. In such a case, the court can order the bankruptcy estate representative to pay the unpaid

---

[14] Also, I am unaware of the existence of any legislative history that supports Blue Crab's argument. See H.R. Rep. No. 109-31 (2005) at 146.

allowed administrative expense. It is possible that this case is such a case. However, before I can make that determination, a hearing is necessary so that the Debtor's reasons for the disparate treatment can be aired.

Second, Blue Crab's argument overlooks the fact that the Debtor's payments to postpetition trade creditors are being made pursuant to 11 U.S.C. §363(c)(1), not 11 U.S.C. §503(b)(1). In other words, the expenses are being paid without the formality of court allowance under §503(b). I recognize that if the Debtor were not actually paying its post-petition payables in the ordinary course, those same liabilities might also be allowable under §503(b)(1). However, if unpaid postpetition creditors invoke their rights under §503(a) and (b), the same issues would be presented as are raised by Blue Crab's request for payment: What are the Debtor's reasons for not paying the expense? Are there sufficient funds in the estate to make the payment? What effect would payment have on the Debtor, the other creditors and prospects for a successful conclusion to the bankruptcy case? What impact would non-payment have on the creditor? These are the issues that must be considered when any holder of a §503(b) allowed administrative expense seeks to compel payment from the bankruptcy estate. Thus, in a technical sense, Blue Crab's §503(b)(9) administrative expense is being treated the same as any unpaid, allowed §503(b) administrative expense. There is no disparate treatment between different types of §503(b) expenses. To the extent there is different treatment, it is between administrative expenses allowed under §503(b) and post-petition liabilities being paid pursuant to 11 U.S.C. §363(c)(1). Whether this discrimination is justified remains to be determined.

Finally, I find support for my rejection of Blue Crab's argument by comparing 11 U.S.C. §503(b)(9) to 11 U.S.C. §365(d)(3), a Code provision that addresses more directly than

§503(b)(9) the obligation of the bankruptcy estate to pay a certain type of postpetition obligation. Section 365(d)(3) provides, in pertinent part, that

> [t]he trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected notwithstanding section 503(b)(1) of this title.

11 U.S.C. §365(d)(3). Section 365(d)(3) gives the court discretion to extend the "time for performance" of any obligation arising within the first 60 days after the order for relief, but restricts the exercise of that discretion by providing that "the time for performance shall not be extended beyond such 60-day period." Id.

Section 365(d)(3) was added to the Bankruptcy Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, 98 Stat. 333 (1984). As the court stated in Dieckhaus, the effect of the addition of this provision to the Code was to render rent payments "falling due during the sixty day period [as] an allowable administrative expense without the necessity of notice and hearing, as is ordinarily required by section 503(b)." 73 B.R. at 972; accord, In re Granada, Inc., 88 B.R. 369, 371 (Bankr. D. Utah 1988). Further, the enactment of §365(d)(3) was accompanied by explicit "legislative history indicating that, due to the unique demands made by debtors upon their landlords, landlords are entitled to assurance that rent will be timely paid from the time that an order for relief is entered until a lease is assumed or rejected." In re Orient River Investments, Inc., 112 B.R. 126, 133 (Bankr. E.D. Pa. 1990).

Considering the text of §365(d)(3) and its legislative history, it is not surprising that some courts have held that landlords have a right to immediate payment for rent obligations within the purview of the provision. However, even in the face of the statutory text and accompanying

legislative history, which can be read easily to require the immediate payment of §365(d)(3) rent, some courts have concluded that there are circumstances in which the court may exercise its discretion to withhold immediate payment to a §365(d)(3) landlord. In particular, some courts have held that a landlord asserting a right to payment under §365(d)(3) will not be paid unless the court is satisfied that the estate is administratively solvent.[15] See In re Orient River Investments, Inc., 112 B.R. at 132-34 (discussing the caselaw); see also In re Pudgie's Dev. of N.Y., 223 B.R. 421, 426-427 (Bankr. S.D.N.Y. 1998) (same).

I refer to §365(d)(3) and the caselaw thereunder without taking a position as to the proper construction of that section. My purpose is to contrast §365(d)(3) with §503(b)(9). Based on its text and the sparse legislative history, the case for construing §503(b)(9) as deviating from the accepted principle that the bankruptcy court has discretion concerning the timing of the payment of an allowed administrative expense is much weaker than such an argument under §365(d)(3). Given the division in the caselaw under §365(d)(3), had Congress intended to provide §503(b)(9) claimants with some type of enhanced right to payment after allowance of the expense, I am convinced that it would have made its intent express in the statute and it has not done so.

For all of these reasons, I reject Blue Crab's argument that it is entitled to immediate payment of its §503(b)(9) administrative expense without a further hearing  Given the opposition of the Debtor and the Creditors' Committee to Blue Crab's request for immediate payment, I will hold the evidentiary hearing requested by the Debtor to permit the parties to make an evidentiary

---

[15] Within the latter line of cases, the courts have differed as to whether the burden of showing solvency is on the landlord or whether the burden of establishing insolvency is on the trustee. In re Orient River Investments, Inc., 112 B.R. at 132-34

record to guide the exercise of my discretion.[16]

Date: __December 28, 2006__   _____
                                                **ERIC L. FRANK**
                                                **U.S. BANKRUPTCY JUDGE**

---

[16] It is unnecessary for me to determine at this time which party has the burden of proof on the issue of immediate payment when the holder of an administrative expense allowed under §503(b)(9) seeks to compel payment from the bankruptcy estate.

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA**

IN RE:   BOOKBINDERS' RESTAURANT, INC.   :   Chapter 11
                                          :
         Debtor(s)                        :   Bky. No. 06-12303ELF
                                          :

# O R D E R

**AND NOW,** upon consideration of the Motion of Blue Crab Plus Sfd for Immediate Payment of Administrative Expense Claim Pursuant to 11 U.S.C. §503(b)(9) ("the Motion"), the response thereto of the Debtor and the Official Committee of Unsecured Creditors, and for the reasons set forth in the accompanying Memorandum Opinion, it is hereby **ORDERED** that an evidentiary hearing on the Motion is scheduled for **January 17, 2007**, at 11 a.m., in Bankruptcy Courtroom No. 1, U.S. Courthouse, 900 Market Street, 2d Floor, Philadelphia, PA 19107.

Date:   **December 28, 2006**

                                          _____
                                          ERIC L. FRANK
                                          U.S. BANKRUPTCY JUDGE